IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS MORRIS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 11 C 2244 |
| CITY OF CHICAGO, | ) ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On June 7, 2011, plaintiff Thomas Morris ("Morris") filed a First Amended Complaint (Dkt. No. 6 ("Am. Compl.")) against defendant City of Chicago ("City"). Morris's claims are based on the City's alleged violations Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5 *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623. Currently before the court is the City's "Motion to Dismiss Plaintiff's First Amended Complaint." (Dkt. No. 13 ("City's Mot.").) For the reasons detailed below, the City's motion is denied.

BACKGROUND

Morris's First Amended Complaint alleges race, sex, and age discrimination, as well as two counts of retaliation. Morris is a Caucasian male who is over forty years of age.[1] (Am.

---

[1] Morris's First Amended Complaint alleges that he is fifty-four years old. (Am. Compl. ¶ 51.) However, the charges he filed with the EEOC and IDHR state his birthdate as 8/5/1961. (*Id.*, Exs. 1-4.) Accordingly, as of the date he filed his First Amended Complaint, Morris was only forty-nine years old.

1

Compl. ¶¶ 4, 33, 51.) He has been employed by the City in various departments as a hoisting engineer since October 1998. (*Id.* ¶¶ 3, 6.) From April 2007 through March 2008, Morris worked for the Department of Transportation. (*Id.* ¶ 7.) During that time, Morris was harassed and "underpaid . . . for hours worked" by his supervisor, Bruce Hudson ("Hudson"). (*Id.*) Morris then transferred to the Department of Water Management in March 2008. (*Id.* ¶ 6.) In November 2008, Morris was summarily disciplined and suspended without pay after he was found to have violated the City's "Violence in the Workplace" policy. (*Id.* ¶ 9.) Also while at the Department of Water Management, Morris was harassed by the City's "agents and supervisory personnel," who forced him to work undesirable shifts and denied him a transfer to an open position at "a different facility." (*Id.* ¶ 11.) Morris generally alleges that his co-workers who are non-white, female, and younger than Morris "have not experienced such harassment and mistreatment." (*Id.* ¶¶ 13, 34, 52.)

Morris also alleges in Count IV that the City's agents, "particularly its supervisory personnel, denied [Morris's] bids for transfer and shift preferences, and harassed [Morris] partially in retaliation for his filing of good faith grievances" and charges with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC"). (Am. Compl. ¶ 69.) Morris alleges in his second count of retaliation, Count V, that he was retaliated against by being assigned to work on a crew with a hostile employee. (*Id.* ¶¶ 85-88.) Specifically, Morris's co-worker, Rodney Brewer ("Brewer"), harassed Morris by "using foul and hostile language," intimidating and threatening Morris, and physically attacking him. (*Id.* ¶ 86.) Brewer threw "a soda cup or container" at Morris and attempted "to drive his truck over [Morris's] body and person" sometime after they began working together in October

2009. (*Id.*) Morris complained of this conduct "on multiple occasions to management and supervisory personnel," but nothing was done to address his complaint. (*Id.* ¶ 87.) Morris alleges that the City's inaction regarding these complaints was retaliation against Morris for Morris's filing IDHR and EEOC charges. (*Id.* ¶ 88.) Morris filed charges with the IDHR or the EEOC on August 19, 2008, March 3, 2009, and November 25, 2009. (*Id.* ¶¶ 8, 10, 12, 89.)

The City filed a motion to dismiss Morris's First Amended Complaint in its entirety, arguing that Morris has not provided sufficient information so as to give the City fair notice of his claims and the grounds on which they rest.

## LEGAL STANDARD

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). To be facially plausible, a plaintiff's allegations must allow "the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Id.* However, "the plausibility requirement is not akin to a 'probability requirement . . .'" *Id.* The complaint must simply give defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted).

The Seventh Circuit has interpreted *Iqbal* as "admonishing those plaintiffs who merely parrot the statutory language of the claims they are pleading . . ., rather than providing some specific facts to ground those legal claims." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Without "some specific facts," the complaint is insufficient and fails to give defendant "fair

3

notice." *Id.* However, a complaint is sufficient if it gives "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank*, 614 F.3d 400, 404 (7th Cir. 2010).

ANALYSIS

I.  Discrimination Claims (Counts I-III)

As a preliminary matter, the City argues that the court should not consider Morris's allegations regarding harassment by Hudson, because the EEOC rejected as untimely Morris's charge corresponding to those allegations. (City's Mot. at 5.) Both Title VII and the ADEA require plaintiffs to file timely charges with the EEOC as a prerequisite to filing a legal claim in court based on the same allegations. *Connor v. Ill. Dept. of Natural Resources*, 413 F.3d 675, 680 (7th Cir. 2005) (Title VII); *Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520, 527 (7th Cir. 2003) (ADEA). Morris alleges in his First Amended Complaint that he was harassed by Hudson through March 2008, and that he "filed a charge with the [IDHR], No. 2009CA2733, cross-filed with the [EEOC], No. 21B-2009-01349, on August 19, 2008." (Am. Compl. ¶¶ 7-8.) In ruling on a motion to dismiss, a court may consider exhibits that are attached to plaintiff's complaint and are central to the plaintiff's claims. *Webster v. New Lennox Sch. Dist. No. 122*, 917 F.2d 1004, 1005 (7th Cir. 1990). It is unclear from the exhibits attached to Morris's First Amended Complaint exactly when Morris filed his charge against Hudson with the IDHR. (*See* Dkt. No. 6-3, p.1; Dkt. No. 6-2, p. 2.) Specifically, one charging document against Hudson includes an IDHR intake date of August 19, 2008,[2] while another charging document against

---

[2] The court notes that the August 19, 2008 charge is not notarized and does not contain either an IDHR or EEOC charge number.

4

Hudson includes an IDHR intake date of June 3, 2009. (*Id.*) It is clear, however, that Charge No. 21B-2009-01349, filed against Hudson on June 3, 2009, and referenced by Morris in his First Amended Complaint, was rejected as untimely by the EEOC. (*See* Dkt. No. 6-2, p.1.) The court therefore strikes paragraphs 7 and 8 from Morris's First Amended Complaint and will not consider Morris' allegations of harassment by Hudson in determining whether Morris's complaint is sufficient to survive the City's motion to dismiss.

The City next argues that Morris has failed to provide facts detailed enough to state a cause of action for discrimination. (City's Mot. at 5-6.) The court disagrees. Morris has alleged that personnel acting on behalf of the City denied Morris's bids for transfer and shift preferences. (Am. Compl. ¶¶ 11, 35, 52.) Contrary to the City's assertions, Morris does provide a timeframe for these events, alleging that he filed an EEOC charge on March 3, 2009, and that he was "forced to work an undesirable shift" and "denied a transfer to a different facility" sometime "thereafter." (*Id.* ¶¶ 10-11.) These allegations narrow the relevant time period to sometime between March 3, 2009 and May 3, 2011 – the date of the First Amended Complaint. The grounds for Morris's discrimination claims, although not a model of clarity, are sufficiently set forth to put the City on notice of Morris's claims against it. To be facially plausible under *Twombly* and *Iqbal*, a complaint need not contain any more factual detail than this. *Iqbal*, 129 S.Ct. at 1949; *see also Swanson*, 614 F.3d at 404 (stating that a plaintiff need only plead facts sufficient to "present a story that holds together").[3]

---

[3] Although Morris also describes a November 2008 disciplinary action in his First Amended Complaint, (Am. Compl. ¶ 9), it is unclear what aspect of this event is alleged to have been discriminatory – the fact that Morris was found to have violated the City's "Violence in the Workplace" policy, the procedures under which the City reached its conclusion, the nature or substance of Morris's punishment, or the subsequent denial of Morris's grievance and challenge

The City also argues that Morris fails to allege that his race, sex, or age were the reason for any of the City's alleged conduct. (City's Mot. at 6.) This argument also fails. Morris has alleged that the City did not subject of other similarly situated City employees, who are non-white, female, and younger than Morris, to the same "harassment and mistreatment as that described hereinabove." (Am. Compl. ¶¶ 13, 34, 52.) These statements, accepted as true, make "plausible" Morris's assertion that his supervisors subjected him to discriminatory treatment because of his race, sex, and age. In other words, the court can "draw the reasonable inference that the [City] is liable for the misconduct alleged." *Iqbal*, 125 S.Ct. at 1949.

The City's final argument in favor of dismissal of Morris's discrimination claims is that the denial of bids for transfer and shift preference do not rise to the level of an adverse employment action as required by Title VII and the ADEA. (City's Mot. at 6-7.) However, because a showing of an "adverse employment action" is part of a plaintiff's *prima facie* case in an employment discrimination case, such an argument is more appropriate for summary judgment. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (holding that a plaintiff's complaint need not plead facts sufficient to establish a *prima facie* case in order to survive a motion to dismiss). The only case the City provides in support of this argument is a decision on a motion for summary judgment. *Thomas v. Potter*, 202 F.App'x. 118 (7th Cir. 2006). Before a court can determine whether an adverse action rises to the level required by the statute, there needs to be greater factual development of the claim. *See id.* at 119 (stating that a shift change

---

to his suspension without pay. Morris does not refer to the November 2008 disciplinary action elsewhere in his First Amended Complaint, nor does he specifically allege that other employees were treated differently under similar circumstances. The court therefore strikes paragraph 9 from Morris's First Amended Complaint and declines to consider this allegation in addressing the sufficiency of Morris's discrimination claims.

could be considered an adverse employment action if the employee had a "unique vulnerability" that the employer "knew about and sought to exploit"). Accordingly, the court denies the City's request to dismiss Morris's discrimination claim on this basis.

Morris's allegations regarding his discrimination claims are sufficient to put the City on notice of what his claims are and the grounds upon which they rest. *Twombly*, 550 U.S. at 555. The City should be able to determine whether, from March 2009 to the present, Morris submitted bids for transfer or shift preference; if its supervisors in the Department of Water Management denied those bids; and the reasons for any denials. Morris's race, age, and sex discrimination claims therefore meet the pleading standards set forth in *Twombly* and *Iqbal*.

II.     Retaliation Claims (Counts IV-V)

Morris's retaliation claims also meet the *Twombly* and *Iqbal* standards. Morris's first retaliation claim, Count IV, is based on the same allegations as Morris's discrimination claims, and the same analysis applies.

The City also argues that Morris did not allege facts specific enough to support his second retaliation claim in Count V. (City's Mot. at 7-8.) Morris has alleged that after he filed a discrimination charge with the IDHR and EEOC – IDHR Charge Number 2009 CF 4273 – his supervisors subjected him to a "hostile work environment" by assigning him to work with an employee who was known to be disposed to violent outbursts. (Am. Compl. ¶¶ 85-88.) Morris alleges that this assignment, and the supervisors' subsequent inaction after Morris complained of his co-worker's behavior, was in retaliation for filing his discrimination charge. (*Id.* ¶ 88.) Again, the court can discern a "plausible" claim of retaliation based on these allegations.

7

Therefore, both of Morris's claims for retaliation meet the *Twombly* and *Iqbal* pleading standard, and are sufficient to survive the City's motion to dismiss.

## CONCLUSION

For the foregoing reasons, defendant City of Chicago's "Motion to Dismiss Plaintiff's First Amended Complaint" (Dkt. No. 13) is denied. The court, however, strikes paragraphs 7, 8, and 9 of the First Amended Complaint and strikes the allegations of harassment by non-party Bruce Hudson as untimely filed. The City of Chicago's answer is due on or before December 6, 2011. Counsel are requested to meet pursuant to Rule 26(f) and jointly file a Form 52 on or before December 13, 2011. This case is set for a report on status and entry of a scheduling order on December 20, 2011 at 9:00 a.m. The parties are encouraged to discuss settlement.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: November 21, 2011